UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AGRI-BEST PROPERTIES, LLC, | ) | Case No. 10-44600 |
| | ) | |
| Debtor. | ) | Hon. Eugene R. Wedoff |

**SECOND AND FINAL FEE APPLICATION OF SHAW GUSSIS FISHMAN GLANTZ WOLFSON & TOWBIN LLC, AS COUNSEL FOR AGRI-BEST PROPERTIES, LLC, FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES AND FOR RELATED RELIEF**

Steven B. Towbin and the law firm of Shaw Gussis Fishman Glantz Wolfson & Towbin LLC (collectively, "Shaw Gussis") applies to this Court (the "Final Application"), pursuant to 11 U.S.C. §§ 330 and 331 and Federal Rules of Bankruptcy Procedure 2002(a)(6), 2002(i), 2016(a) and 9007, for the (i) final allowance and payment of $75,874.50 in compensation for 203.50 hours of professional services (the "Services") rendered on behalf of Agri-Best Properties, LLC ("ABP") and for the reimbursement of $300.74 for expenses (the "Expenses") incurred incidental to the Services during the period of November 13, 2010 to June 3, 2011 (the "Application Period"); and (ii) final approval of interim compensation and expense reimbursement previously applied for and awarded by this Court on an interim basis. In support of this Final Application, Shaw Gussis respectfully states as follows:

**BACKGROUND**

1. On November 13, 2010 (the "Petition Date"), ABP and Agri-Best Holdings, LLC ("ABH" and together with ABP, the "Debtors"), each filed a voluntary petition in this Court under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code"), thereby commencing the above-captioned cases (the "Cases").

{10007-001 APPL A0291202.DOC 4}

2. ABH's case was converted to one under chapter 7 of the Bankruptcy Code effective on December 1, 2010 (the "Conversion Date"). On or about December 1, 2010, Ronald Peterson of Jenner & Block (the "Trustee") was appointed as chapter 7 trustee for the ABH estate.

3. ABP owns ABH's former operating facility located at 4430 S. Tripp Avenue in Chicago (the "Property"), and it is a wholly-owned subsidiary of ABH.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

## RETENTION OF SHAW GUSSIS

5. On October 18, 2010, the Debtors applied to the Court for an order approving the retention of Shaw Gussis as general bankruptcy counsel in connection with the Cases and the compensation arrangement related thereto (the "Retention Application"). On November 24, 2010, this Court entered an order approving the Retention Application and authorizing the Debtors to employ Shaw Gussis as their general bankruptcy counsel in connection with the Cases effective as of the Petition Date (the "Retention Order").

## THE SERVICES RENDERED BY SHAW GUSSIS

6. From and after the inception of Shaw Gussis' representation of ABP up to and including the present time, Shaw Gussis has served as legal counsel to ABP with respect to all bankruptcy matters that have arisen in or with respect to this case.

7. The vast majority of the fees and expenses sought herein relate to services rendered in connection with the sale of the Property. On December 30, 2010, ABP filed a Motion for the Entry of an Order Approving (A) Sale of Property, (B) Terms of Sale Agreement, (C) Bidding Procedures and Break-Up Fee and (D) Related Relief (the "First Sale Motion"). The

First Sale Motion requested authority to, *inter alia*, approve the sale agreement authorizing ABP to sell the Property to Kim and Scott's Gourmet Pretzels, Inc. (the "First Buyer"), subject to any higher and better bids. Prior to filing the First Sale Motion, Shaw Gussis represented ABP in negotiating and finalizing the sale agreement and all ancillary sale documents with the First Buyer. Unfortunately, after filing and presenting the First Sale Motion, the First Buyer exercised its right to terminate the contract prior to closing on the sale of the Property.

8. Thereafter, Shaw Gussis represented ABP in negotiating and finalizing a sale of the Property with a new buyer, EURO USA CHICAGO, LLC (the "Second Buyer"). On February 8, 2011, ABP filed a Motion for the Entry of an Order Approving (A) Sale of Property, (B) Terms of Sale Agreement, (C) Bidding Procedures and Break-Up Fee and (D) Related Relief (the "Second Sale Motion"). Prior to filing the Second Sale Motion, Shaw Gussis represented ABP in negotiating and finalizing the sale agreement and all ancillary sale documents with the Second Buyer. Shaw Gussis also represented ABP in connection with the closing on the sale of the Property to the Second Buyer, which yielded a purchase price of $2,250,000.00 (the "Purchase Price").

9. Shaw Gussis also assisted ABP in resolving mechanics' lien claims asserted against the Property by Domain Corporation ("Domain") and Cooling Equipment Service, Inc. ("CES" and together with Domain, the "Claimants"). Domain provided roof repair services to the Property and asserted a claim in the amount of $2,700, and CES provided services related to certain refrigeration units at the Property and asserted a claim in the amount of $10,631.61 Shaw Gussis assisted ABP in reaching a compromise that would resolve the claims asserted by the Claimants. In connection therewith, Shaw Gussis conducted research in connection with the Illinois Mechanics' Lien Act (the "Act"), negotiated a resolution with the Claimants, and

prepared, filed and presented a motion seeking court approval of the settlement reached with the Claimants.

10. Attached hereto and made a part hereof is <u>Exhibit A</u>, which includes the invoices for Services rendered by Shaw Gussis to ABP for the period from November 13, 2010 through June 3, 2011 (the "<u>Invoices</u>").

11. All of the Services for which compensation is requested were rendered in connection with ABP's case and related matters. All of the time described in Exhibit A represents the actual amount of time spent or, in certain instances, less than the actual amount of time spent by attorneys of Shaw Gussis who rendered the described services. In certain instances, the time reflected in Exhibit A has been reduced in an effort by Shaw Gussis to eliminate excessive, duplicative or, in hindsight, unnecessary or unproductive services.

12. The hourly rates charged by the bankruptcy professionals of Shaw Gussis who worked on ABP's case and whose time is a part of the Services are as follows:

| **Members** | **Rate**[1] |
|---|---|
| Steven B. Towbin | $600.00/$625.00 |
| Peter J. Roberts | $450.00 |
| David L. Shaw | $360.00 |
| Joseph L. Cohen | $350.00 |
| | |
| **Associates** | **Rate** |
| Kimberly Bacher | $290.00/$315.00 |
| | |
| **Paralegals** | **Rate** |
| Patricia M. Fredericks | $180.00/$185.00 |

These rates are based on the experience and expertise of the respective personnel.

13. The Services have required a total of 203.50 hours on the part of Shaw Gussis as more fully set forth in the Invoices. <u>See</u> <u>Exhibit A</u>. Based upon the customary and reasonable

{10007-001 APPL A0291202.DOC 4}                                4

rates charged by Shaw Gussis for services in cases under the Bankruptcy Code and for services other than services rendered in cases under the Bankruptcy Code, the fair and reasonable value of the Services is not less than $75,874.00 (the "Final Compensation Request"). All of the Services for which compensation is requested were Services which, in Shaw Gussis' billing judgment, were necessarily rendered after due consideration of the expected cost and anticipated benefit of such Services.

14.  Hereinbelow, the Court will find a narrative, by category, of the Services provided by Shaw Gussis to ABP (the "Summaries"). The narrative is provided for all categories of Services in which at least $1,500 of compensation is requested. The Invoices have a detailed description of all Services, by category, regardless of the amount requested.

### Case Administration

15.  Shaw Gussis expended 17.90 hours of professional services having a value of $7,523.00 in connection with services pertaining to general case administration, including but not limited to, preparation for and participation in hearings, meetings, telephone conferences and other activities where various subject matters were discussed, analyzed, or otherwise acted upon. Specifically, this category of Services includes: (i) reviewing, revising and filing ABP's monthly summaries of cash receipts and disbursements; (ii) preparing for and attending the meeting of creditors; (iii) conferring with the Trustee regarding the administration of ABP's case; (iv) participating in multiple conferences with Wells Fargo Bank, N.A. ("Wells Fargo"), ABP's senior secured lender and the mortgage holder on the Property, regarding the status of ABP's case and issues related to the maintenance and sale of the Property, including necessary roof repairs for the Property; (v) attending status hearings in ABP's case; (vi) drafting, reviewing and

---

[1] On January 1, 2011, Shaw Gussis increased the hourly billing rates of certain of its professionals. Professionals in the chart below with two billing rates reflect the billing rate prior to January 1, 2011, and the billing rate post

{10007-001 APPL A0291202.DOC 4}                 5

revising a motion to dismiss ABP's case (the "Motion to Dismiss"); and (vii) finalizing the Motion to Dismiss, preparing a proposed order granting the Motion to Dismiss and coordinating service of the Motion to Dismiss.

### Cash Collateral

16. Shaw Gussis expended 14.7 hours of professional services having a value of $5,229.00 in connection with services pertaining to ABH's use of Wells Fargo's cash collateral. Specifically, this category of Services includes: (i) negotiating ABP's continued use of cash collateral with Wells Fargo; (ii) drafting, negotiating and revising a motion authorizing ABP's post-petition financing; (iii) reviewing and negotiating a cash collateral budget with Wells Fargo; (iv) preparing for and participating in a hearing regarding ABP's use of Wells Fargo's cash collateral; and (vi) participating in conference calls with the Wells Fargo regarding ABP's use of cash collateral.

### Sale Process

17. Shaw Gussis expended 149.5 hours of professional services having a value of $55,699.00 in connection with services related to the sale of the Property. Specifically, this category of services includes: (i) extensively negotiating a sale of the Property to the First Buyer; (ii) reviewing, revising and editing the sale documents in connection with the sale of the Property to the First Buyer; (iii) reviewing and analyzing the title commitments, survey and environmental reports regarding the Property; (iv) drafting, reviewing, finalizing and presenting the First Sale Motion; (v) addressing all issues regarding the termination of the contract to purchase the Property by the First Buyer; (vi) extensively negotiating a sale of the Property to the Second Buyer; (vii) reviewing, revising and editing the sale documents in connection with the sale of the Property to the Second Buyer; (viii) drafting, reviewing, finalizing and presenting the Second

---

January 1, 2011.

Sale Motion; and (ix) working on closing the sale of the Property with the Second Buyer and on all related closing issues, including preparing all closing documents and preparing an escrow agreement.

### Creditors and Claims (Mechanics' Lien Claimants)

18.    Shaw Gussis expended 16.80 hours of professional services having a value of $5,974.50 in connection with services related to claims asserted by creditors of ABP. Specifically, this category of Services includes: (i) conferring with certain creditors of ABP regarding their claims; (ii) reviewing and analyzing the mechanics' lien claims asserted by the Claimants; (iii) researching the Act and evaluating whether the Claimants have properly asserted mechanics' lien claims against the Property; (iv) negotiating a resolution of the mechanics' lien claims with the Claimants; (v) drafting, revising, filing and presenting a motion to approve a settlement with the Claimants; and (vi) preparing mechanics' lien release waivers to be executed by the Claimants and recorded against the Property.

### SUMMARY OF SERVICES RENDERED BY PROFESSIONAL

19.    In summary, the lodestar amount of compensation sought with respect to the Services is $75,874.50 (the "Lodestar Amount"). In addition, the total compensation sought for each professional with respect to the aforementioned categories as set forth in Exhibit A can be summarized as follows:

### PROFESSIONAL RATE CHARTS

| Professional | Position | Rate | Hours | Amount |
|---|---|---|---|---|
| Steven B. Towbin | Member | 600.00 | 30.00 | $18,000.00 |
| Steven B. Towbin | Member | 625.00 | 24.20 | $15,125.00 |
| Peter J. Roberts | Member | 450.00 | 1.80 | $810.00 |
| David L. Shaw | Member | 360.00 | 33.70 | $12,132.00 |
| Joseph L. Cohen | Member | 350.00 | 0.90 | $315.00 |
| Kimberly Bacher | Associate | 290.00 | 18.30 | $5,307.00 |

| Professional | Position | Rate | Hours | Amount |
|---|---|---|---|---|
| Kimberly Bacher | Associate | 315.00 | 51.60 | $16,254.00 |
| Patricia M. Fredericks | Paralegal | 180.00 | 4.70 | $846.00 |
| Patricia M. Fredericks | Paralegal | 185.00 | 38.30 | $7,085.50 |
| | | Total: | 203.50 | $75,874.50 |

20. The hourly rates charged by Shaw Gussis compare favorably with the rates charged by other Chicago metropolitan firms having attorneys and paralegals with similar experience and expertise as the Shaw Gussis attorneys and paralegals. Further, the amount of time spent by Shaw Gussis with respect to its representation of ABP is reasonable given the difficulty of the issues presented, the time constraints imposed by the circumstances, the amounts at stake and the sophistication and experience of opposing counsel.

21. The Lodestar Amount for all of the services rendered by Shaw Gussis during the Application Period is $75,874.50. Given the criteria set forth in 11 U.S.C. § 330, namely (i) the nature, extent and value of the services, (ii) the time spent, (iii) the rates charged for such services, (iv) the performance of the services within a reasonable amount of time commensurate with the complexity, importance and the nature of the problem, issue or task addressed, and (v) the reasonableness of the services based on the compensation charged by comparably skilled practitioners in other bankruptcy and non-bankruptcy matters, Shaw Gussis respectfully submits that the Lodestar Amount represents a fair and reasonable amount for the allowance of interim compensation in this case.

## THE EXPENSES REQUESTED

22. All of the Expenses for which reimbursement is requested are expenses which Shaw Gussis customarily recoups from all of its clients. The types of costs for which reimbursement is sought are listed below:

| Internal Photocopy | 10¢ per page |
|---|---|
| Commercial/Court Photocopy | actual cost |
| Commercial Messenger | actual cost |
| Long Distance Telephone | actual cost |
| Local Telephone | no charge |
| Outgoing Facsimiles | no charge |
| Incoming Facsimiles | no charge |
| CMECF/Pacer | actual cost |
| Postage | actual cost |
| Overnight Delivery (*e.g.*, Federal Express) | actual cost |
| Filing/Recording Fees | actual cost |
| Deposition Costs | actual cost |
| Local and Long Distance Travel | actual cost |

23. The specific Expenses for which reimbursement is requested during the Application Period are as follows:

| Copying Services | $105.66 |
|---|---|
| Photocopy | $41.30 |
| *Westlaw* | ($107.32)[2] |
| Pacer | $4.80 |
| Messenger | $33.96 |
| Parking/Taxi | $70.00 |
| Postage | $45.02 |
| **TOTAL:** | **$300.74** |

24. All of the Expenses for which reimbursement is sought are costs actually borne by Shaw Gussis and were necessarily incurred in connection with this case.

25. As noted previously, all of the Expenses for which reimbursement is requested are of the type and amount of expense that Shaw Gussis customarily recoups from all of Shaw Gussis' clients. Further, the expenses for which reimbursement is sought constitute the types and amounts generally allowed by bankruptcy judges in this and other districts. Exhibit A contains an itemization for all Expenses for which reimbursement is sought through this Final Application.

**COMPENSATION AND EXPENSES RECEIVED TO DATE BY SHAW GUSSIS**

26. Pursuant to an order entered by this Court on November 30, 2010 (the "First Interim Order") [Docket No. 276], Shaw Gussis has been allowed $143,319.54 in fees and expenses on an interim basis (the "Previously Allowed Fees and Expenses") for services rendered to both ABP and ABH. However, only $7,827.00 of the Previously Allowed Fees and Expenses are attributable to fees and expenses related to services rendered solely to ABP.

27. In connection with the closing on the contract for the sale of the Property to the Second Buyer, $1,909,510.00 was transferred to Wells Fargo to satisfy a portion of its claim, and $100,000.00 was transferred to Shaw Gussis to be held in escrow (the "Escrowed Funds") for the payment of fees and expenses of Shaw Gussis, quarterly fees for the United States trustee pursuant to 28 U.S.C. § 1930 and for the resolution of two mechanics' lien claimants that asserted liens against the Property (collectively, the "Administrative Expenses").[3]

28. Shaw Gussis requests that it be authorized to deduct any fees and expenses authorized herein from the Escrowed Funds. Shaw Gussis also requests that it be authorized to remit the balance of the Escrowed Funds, after application of the fees and expenses authorized herein and the other Administrative Expenses, to Wells Fargo. As ABP's senior secured lender, Wells Fargo has a lien on all proceeds of the sale of the Property to secure the balance of its claim, including the Escrowed Funds, which claim far exceeds the Purchase Price.

---

[2] The expenses incurred for Westlaw charges are not being sought herein.
[3] Payment of the mechanics' lien claims is anticipated to be $6,815.80 as set forth in Agri-Best Properties, LLC's Motion To Approve Compromise with Domain Corporation and Cooling Equipment Service, Inc. filed with this Court on May 6, 2011. The quarterly US Trustee fees are anticipated to be $6,500.00.

## COMPLIANCE WITH SECTION 504

29.     Other than as provided for and allowed by 11 U.S.C. § 504, there is no agreement between Shaw Gussis and any other firm, person or entity for the sharing or division of any compensation paid or payable to Shaw Gussis.

## NOTICE

30.     Notice of this Final Application has been given to the Office of the United States Trustee and all of ABP's creditors.  Shaw Gussis respectfully requests that additional notice of the hearing on this Final Application be excused for good cause shown pursuant to Fed. R. Bankr. P. 2006(a)(6), 2002(i) and 9007.

WHEREFORE, Shaw Gussis requests the entry of an order, substantially in the form attached hereto that:

(a) allows Shaw Gussis $75,874.50 in compensation for the Application Period;

(b) allows Shaw Gussis $300.74 in Expense reimbursement for the Application Period;

(c) authorizes Shaw Gussis to deduct any fees and expenses authorized herein from the Escrowed Funds;

(d) authorizes Shaw Gussis to remit the balance of the Escrowed Funds, after application of the fees and expenses authorized herein and the Administrative Expenses, to Wells Fargo;

(e) approves on a final basis all Previously Allowed Fees and Expenses awarded by this Court o an interim basis;

(f) Waives other and further notice of the hearing with respect to the Application; and

(g) provides Shaw Gussis with such additional relief as may be appropriate under the circumstances.

Dated: June 3, 2011

Respectfully submitted,

Shaw Gussis Fishman Glantz
 Wolfson & Towbin LLC

By:    /s/ Steven B. Towbin

Steven B. Towbin (#2848546)
Peter J. Roberts (#6239025)
Kimberly Bacher (#6285677)
Shaw Gussis Fishman Glantz
  Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60610
(312) 541-0151  telephone
(312) 980-3888  facsimile

{10007-001 APPL A0291202.DOC 4}